## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

ERVIN BATES                                      CIVIL ACTION NO. 11-1395

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

STEVE MCKENNA, ET AL.                            MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 16) filed by Defendants, the City of Shreveport ("the City") and Agent Steve McKenna ("Agent McKenna"). The motion seeks dismissal of all of Plaintiff Ervin Bates' ("Bates") claims. Bates opposed the motion. See Record Document 18. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Bates' claims are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

In July 2011, Bates filed a lawsuit pursuant to Title 42, United States Code, Section 1983 against Agent McKenna and the City. See Record Document 1-3. Bates alleged false arrest and excessive force claims under federal and state law. See id. Defendants have now filed a Motion for Summary Judgment seeking dismissal of all of Bates' claims. See Record Document 16.

**I.      Local Rule 56 - Facts Deemed Admitted.**

Local Rule 56.1 provides that "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1. Defendants have complied with this rule. See Record Document 16-2.

Local Rule 56.2 requires that the opposition to a motion for summary judgment "[s]hall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried."  L.R. 56.2.  The rule further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  Id.

Here, Bates filed a "Statement of Uncontested Fact."  Record Document 18-1.  The document is one paragraph in length and alleges:

> The charges of Interference with an Officer and Resisting an Officer against plaintiff were dismissed in Shreveport City Court.  See Exhibit F of Defendant's Motion for Summary Judgment.

Id.  This paragraph correlates to paragraph 11 of Defendants' "Statement of Material Facts," which provides:

> Plaintiff was charged with interference with a police officer and resisting an officer.  Plaintiff entered into a pretrial diversion agreement with the prosecutor for a period of probation.  After expiration of the probationary period, both charges against him were *nolle prossed*.  See Shreveport City Court, Criminal Docket Nos. 10016992, 10016993; Exhibit F, Court Minutes.

Record Document 16-2 at ¶ 11.  Thus, Bates only "controverted" the facts set forth in paragraph 11 of Defendants' filing.  All other facts are deemed admitted for purposes of the instant motion.  See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

## II.    Factual Background.[1]

On July 14, 2010, members of the Shreveport-Caddo Drug Task Force ("Task Force") met with a confidential informant to set up a purchase of narcotics from a residence located at 1815 Perrin Street in Shreveport, Louisiana.  Task Force members observed the informant purchase four baggies of marijuana.

That same day, Task Force Agent Ryan Robinson ("Agent Robinson") executed an affidavit based on the aforementioned narcotics transaction and submitted the affidavit to the First Judicial District Court for Caddo Parish, Louisiana.  Agent Robinson obtained a warrant to search the residence located at 1815 Perrin Street.

At approximately 9:15 p.m. on July 20, 2012, Task Force members executed the search warrant at 1815 Perrin Street.  Garyon Bates was located in the front bedroom and Sandy Bates was located in the back bedroom.   Two children were also inside the residence.  Upon entry, both Garyon Bates and Sandy Bates were immediately secured, handcuffed, and then placed on their knees in the front yard of the residence.

While other Task Force members searched the house, Agent John Witham ("Agent Witham") stood in the street in front of the residence to assist in securing the perimeter. A black male, who was later identified as Alonzo Bates ("Alonzo"), walked past Agent Witham towards the residence.  Alonzo was loud, hostile, and was complaining about the arrest of his brothers, Garyon Bates and Sandy Bates.

Alonzo walked towards the front yard of the residence and requested to take custody

---

[1]The majority of the facts set forth in Defendants' "Statement of Material Facts" have been admitted.  Thus, the Factual Background section of the instant Memorandum Ruling is drawn from Defendants' filing.

of the two children who had been inside the residence during the execution of the search warrant.  As he returned to the street and again walked past Agent Witham, Alonzo verbally assaulted Agent Witham, telling Agent Witham to "take your badge off so I can whoop your ass."  Agent Witham directed Alonzo to be quiet and to leave the scene with the children.  Alonzo ignored the commands and continued to be verbally combative.  Agent Witham then grabbed Alonzo's arm and attempted to escort him away from the scene.  Alonzo jerked away and turned towards Agent Witham in an aggressive manner.  Agent Witham then became concerned for his safety and the safety of other Task Force members.  Therefore, he performed a leg sweep and took Alonzo to the ground and attempted to handcuff him.

While Agent Witham was restraining Alonzo, Bates began running toward Agent Witham and Alonzo.  Bates was yelling loudly at Agent Witham to "let my brother go."  Bates' actions caused Agent Witham to turn his attention away from Alonzo and interfered with his arrest.

Agent Steve McKenna ("Agent McKenna") intervened and told Bates to calm down and get back.  When Bates refused, Agent McKenna grabbed Bates around his chest and quickly placed him on the ground.  Once he was on the ground, Bates held his hands underneath his body.  Agent McKenna ordered Bates to stop resisting and to place his hands behind his back.  Bates refused.  Agent McKenna delivered three distraction strikes with a closed fist to Bates' right shoulder and again ordered Bates to stop resisting and to put his hands behind his back.  After a fourth distraction strike to Bates' right shoulder area, Bates began to comply with Agent McKenna's commands and placed his hands behind his back.  Bates was handcuffed.  Both he and Alonzo were transported to the Shreveport City Jail.

Alonzo was charged with interference with a police officer and disturbing the peace. He pled guilty to both charges and was sentenced to pay a fine.

Bates was charged with interference with a police officer and resisting an officer. He entered into a pretrial diversion agreement with the prosecutor for a period of probation. Bates refers to this agreement as the "District Attorney Probation" program.   After expiration of the probationary period, both charges against him were *nolle prossed.*  The only injuries suffered by Bates as a result of the force allegedly used against him were some bruises and maybe a scratch.

## LAW AND ANALYSIS

### I.   Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

---

[2]The Court notes that the newly amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).  The amendment was not a substantive change to the summary judgment standard and is essentially a distinction without difference.

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

**II.    Claims Against Agent McKenna.**

**A.    Heck v. Humphrey.**

In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, absence of some other bar to the suit.

Id. at 486-487, 114 S.Ct. at 2372-2373.  As discussed *infra*, this doctrine is also applicable to pretrial programs such as pretrial diversion agreements, accelerated rehabilitation disposition programs, deferred adjudication orders, and pretrial intervention programs, wherein charges are dismissed only after the criminal defendant successfully completes

a probationary period.

In Taylor v. Gregg, 36 F.3d 453 (5th Cir. 1994), the Fifth Circuit reasoned that "entering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant." Id. at 456. The court held that "by entering these agreements, criminal defendants are effectively foregoing their potential [civil] suit[s] in exchange for conditional dismissal of their criminal charges." Id.[3] The Fifth Circuit has also noted that "proceedings are terminated in favor of the accused **only** when their final disposition indicates that the accused is not guilty." Evans v. Ball, 168 F.3d 856, 859 (5th Cir. 1999) (emphasis added).

Likewise, in Gilles v. Davis, 427 F.3d 197, 211-212 (3rd Cir. 2005), the Third Circuit cited the Taylor opinion in reaching its conclusion that an accelerated rehabilitation disposition ("ARD") program is not a favorable termination under Heck. The Gilles court reasoned:

> The ARD program is a court-supervised compromise. Nevertheless, the ARD program imposes several burdens upon the criminal defendant not consistent with innocence, including a probationary term, "restitution . . ., imposition of costs, and imposition of a reasonable charge relating to the expense of administering the program, and such other conditions as may be agreed to by the parties." We agree . . . that probation constitutes an "unfavorable" period of judicially imposed limitations on freedom in which the probationer's violation of the program's terms may result in criminal prosecution.

---

[3]The Taylor court also discussed the public policy rationale behind the application of the Heck rule to pretrial diversion programs. See Taylor, 36 F.3d at 456. The court reasoned that allowing a plaintiff to proceed with civil Section 1983 claims would constitute poor public policy because it would implicitly challenge the validity of the probationary period. See id. Additionally, such practice "would have a chilling effect on prosecutors' willingness to enter into [pretrial diversion] type of arrangements" and "[they] would be less willing to agree to an adjournment in contemplation of dismissal if the defendant could then turn around and sue . . . under Section 1983." Id.

Id. at 211.

Bates argues that Heck is inapplicable to the instant matter because "the designation of 'District Attorney Probation' is not a pretrial diversion program contemplated in Heck." Record Document 18 at 1.  In other words, Bates contends that "District Attorney Probation . . . comes nowhere close to a conviction for purposes of Heck."  Id. at 2.  The Court is unconvinced by this conclusory argument, which Bates has failed to support with evidence or case law.  Bates has failed to cite to any case that distinguishes "District Attorney Probation" from the multitude of other pretrial programs which courts have routinely held are governed by Heck's favorable termination rule.  Instead, the summary judgment record indicates that "District Attorney Probation" is like all other pretrial programs in that criminal charges are dismissed only after the successful completion of a probationary period. Accordingly, the Court finds that Bates' voluntary participation in a pretrial program, whether it is called the "District Attorney Probation" program or a pretrial diversion agreement, is equivalent to a conviction for purposes of Heck.

Under Heck, Bates' voluntary participation in a pretrial diversion program is essentially deemed a conviction for interference with a police officer and a conviction for resisting an officer.  These convictions have not been reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding.  Thus, his Section 1983 action for unlawful arrest and excessive force may be entertained only if the Court determines that a ruling in his favor will not necessarily call into question the validity of his convictions.

### 1.    Unlawful Arrest.

Applying the aforementioned test, the Court concludes that Bates' Section 1983

claim for unlawful arrest is barred by Heck.  Louisiana Revised Statute 14:108 defines the offense of resisting an officer as "the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a *lawful arrest*, *lawful detention*, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity." La. R.S. 14:108(A) (emphasis added).  Thus, Bates' conviction for resisting an officer, i.e., his voluntary participation in a pretrial diversion/probation program, necessarily implies that Agent McKenna made a lawful arrest and a lawful detention.  If Bates were to prevail on his unlawful arrest claim, he would have established that his criminal conviction for resisting an officer lacked any legal basis.   His unlawful arrest claim is, therefore, barred.

### 2.   Excessive Force.

The Court further finds that Bates' excessive force claim is likewise barred by Heck. Such a claim simply cannot coexist with a conviction for interference with a police officer[4] and/or resisting an officer.

In Arnold v. Town of Slaughter, No. 03-30941, 2004 WL 1336637 (5th Cir. June 14, 2004), the Fifth Circuit examined the excessive force claim of a Section 1983 plaintiff who had been convicted of resisting an officer in a Louisiana state court.  Mr. Arnold maintained that he did nothing to provoke the officer's action; he had done nothing wrong; and he had been viciously attacked for no reason. See id. at *2.  The Fifth Circuit concluded that Mr.

---

[4]The offense of interference with a police officer is defined as the "interfere[nce] with any public officer in the discharge of his duties by abuse, force, or threatening language, or in screening from him the object of his search."  Shreveport Public Ordinance 50-160(A).

Arnold's "suit squarely challenge[d] the factual determination that underlie[d] his conviction for resisting an officer."   Id. at *3.  The court reasoned that the suit was barred by Heck.  See id.

Bates, like Mr. Arnold, contends that he did nothing to interfere with or resist Agent McKenna.  He maintains that he was attacked and arrested for no reason.  Bates' allegations in the instant matter, therefore, squarely challenge the factual determinations underlying his "deemed" conviction for interference with a police officer and resisting an officer.  See Pratt v. Giroir, No. 07-1529, 2008 WL 975052, *5-6 (E.D.La. Apr. 8, 2008) (Fifth Circuit precedent is clear that when a plaintiff alleges excessive force during or simultaneous with an arrest, such claims are barred under Heck); Walker v. Munsell, No. 08-30087, 2008 WL 2403768, *1 (5th Cir. June 13, 2008) ("Appellant's claim . . . is not that the officers used excessive force after he stopped resisting or to stop his resistance; his claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by the Appellee officers for no reason. Thus, Appellant's suit squarely challenges the factual determination that underlies his conviction for resisting an officer, and if he prevails, he will have established that his criminal conviction lacks any basis.  This type of excessive force claim is, therefore, the type of claim that is barred by Heck in our circuit.").

### B.    Excessive Force Claim - *De Minimis* Injuries.

Even if the Court were to assume that Bates' excessive force claim was not barred by Heck, such claim fails because he experienced no more than a *de minimis* injury.  In order to state a federal excessive force claim, Bates must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; FN8

and the excessiveness of which was (3) objectively unreasonable." <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-434 (5th Cir. 1996).  To gauge the objective reasonableness of the force used by a law enforcement officer, courts must balance the amount of force used against the need for that force.  <u>See id.</u> at 434.

"The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed." <u>Id.</u>  While courts must consider the context in which the injury occurs, the Fifth Circuit "requires a plaintiff to have suffered at least some injury." <u>Id.</u>  The amount of injury necessary to fulfill the "some injury" requirement and establish a constitutional violation, therefore, is "directly related to the amount of force that is constitutionally permissible under the circumstances." <u>Id.</u> at 434-435.

Here, the summary judgment record establishes that the only injuries Bates claims to have suffered are "little" bruises on his leg, arm and jaw and maybe a scratch on his back and/or sides.  Record Document 16, Exhibit F (Bates Deposition) at 127-128.  None of the alleged injuries required him to seek medical attention.  <u>See id.</u>, Exhibit F at 132. Bates contends that these "injuries are hardly *de minimis*."  Record Document 18 at 2.  He further argues that "[t]he injuries speak for themselves" and that his "injuries are the exact kind of injuries meant to be addressed by this civil rights claim." <u>Id.</u>

Bates' contentions in his opposition brief are conclusory in nature.  He has offered no competent summary judgment evidence to support such allegations and/or contradict his sworn deposition testimony regarding his injuries.  Under these circumstances, the Court believes the amount of force used by Agent McKenna was "objectively reasonable," and that Bates' little bruises and scratches are *de minimis* injuries insufficient to establish a constitutional violation.  Accordingly, Bates' claim of excessive force fails as a matter of

law.

### III.   Claims Against the City.

In his opposition, Bates states that he is not asserting a Monell claim against the City, but rather a vicarious liability tort claim based on the actions of Agent McKenna.  See Record Document 18 at 2-3.  This vicarious liability state law tort claim will be addressed *infra* in Section IV.

### IV.   State Law Claims.

In his opposition, Bates simply asserts that he "has viable state tort law claims against Agent McKenna.  See Record Document 18 at 3.  His state law claims are grounded in his allegations of "unlawful and unreasonable detention, arrest, and excessive force."  Record Document 1-3 at ¶ 38.  Thus, they are identical to the federal claims of unlawful arrest and excessive force.

A review of Louisiana case law reveals that the Heck rationale is equally applicable to state law claims that would attack the validity of Bates' pretrial diversion agreement.  In Restrepo v. Fortunato, 556 So.2d 1362, 1363 (La.App. 5 Cir. 1990), the court reasoned that since "Restrepo was convicted of the crime for which he was arrested and indicted, and the conviction was affirmed by this court, he cannot show that his detention was unlawful."  Likewise, in Rabalais v. Blanche, 524 So.2d 772 (La.App. 3 Cir. 1988), the court applied the same principle, reasoning:

> The record reflects that the trial court refused to accept a plea of nolo contendre, and appellant thereafter entered an unconditional plea of guilty to misdemeanor theft. Therefore, appellant stands convicted of a criminal offense, and this conviction arose out of the incident for which she was arrested. This being the case, appellant cannot demonstrate a bona fide termination of the criminal proceedings in her favor. Therefore, she cannot maintain an action for malicious prosecution.

As for appellant's claim for damages for false arrest, there is no evidence in the record to indicate a wrongful detention by the people at Goudchaux's, Inc. The method and extent of inquiry by the employees of Goudchaux's, Inc. is not of record. Clearly, there was probable cause to detain and question appellant in light of the fact that a guilty plea was entered in this case. We therefore find that the trial court's judgment dismissing appellant's action for false arrest was also proper.

Id. at 773.

Based on the foregoing, it is clear that Bates is barred from asserting state law unlawful arrest and excessive force claims against Agent McKenna, as such claims would attack the validity of Bates' pretrial diversion agreement.  His state law vicarious liability claim against the City also fails because due to the Heck bar, there is no underlying tortious act on the part of Agent McKenna and thus no vicarious liability on the part of the City.  All of Bates' state law claims are, therefore, dismissed.

## CONCLUSION

The Court finds that Bates' federal law claims of unlawful arrest and excessive force are barred by Heck.  Additionally, his federal excessive force claim fails because he has shown nothing more than *de minimis* injuries.  Finally, Bates' state law claims of unlawful arrest and excessive force are also barred by the Heck rationale and his vicarious liability claim against the City is likewise dismissed because there is no underlying tortious act on the part of Agent McKenna.  Accordingly, the Motion for Summary Judgment filed by the City and Agent McKenna is **GRANTED** and all of Bates' claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of August, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE